# UNITED STATES BANKRUPTCY COURT
## DISTRICT OF ARIZONA

| | |
|---|---|
| In re: | Chapter 13 |
| LOWELL E. BASHAM, | Case No. 4:22-bk-01189-BMW |
| Debtor. | **RULING AND ORDER REGARDING DEBTOR'S OBJECTION TO PROOF OF CLAIM 9-2** |

This matter is before the Court pursuant to *Proof of Claim 9-2* (the "Claim") filed by Liza Basham ("Ms. Basham"); the *Debtor's Objection to Proof of Claim 9 and Notice Thereon* (the "Objection") (DE 75)[1] filed by Lowell E. Basham (the "Debtor" and/or "Mr. Basham"); the *Response to Debtor's Objection to Creditor Liza Basham's Proof of Claim* (DE 77) filed by Ms. Basham; and all filings related thereto.

On February 28, 2023, the parties filed their *Joint Pretrial Statement* (DE 93), and on March 30, 2023, the Court held an evidentiary hearing regarding this matter (the "Evidentiary Hearing"), at which time the parties presented evidence and testimony. Thereafter, the parties submitted post-trial briefs,[2] and on May 8, 2023, the Court took this matter under advisement.

Based on the pleadings, arguments of counsel, testimony offered, exhibits admitted into evidence, and entire record before the Court, the Court now issues its ruling.

---

[1] References to "DE" are references to the bankruptcy docket.
[2] DE 100 and DE 101.

## I. Jurisdiction

This is a core proceeding over which this Court has jurisdiction to enter final orders. 28 U.S.C. §§ 1334, 157(b)(2)(A), 157(b)(2)(B), 157(b)(2)(K). No party contests this Court's jurisdiction or authority to enter final orders with respect to this matter.

The following constitute the Court's findings of fact and conclusions of law pursuant to Federal Rule of Civil Procedure 52, made applicable to this proceeding by Federal Rules of Bankruptcy Procedure 7052 and 9014(c).

## II. Facts and Procedural Posture

The parties were married in 2012 and have two minor children. (3/30/2023 Tr. 74:6-9).

While the parties were married, they opened a heating and cooling business known as Basham Heating and Cooling, LLC (the "Business"). (3/30/2023 Tr. 13:18-25). The Debtor was an HVAC contractor for the Business and Ms. Basham worked as an office manager. (TE C at 1).[3]

In 2018, the Debtors' gross annual income was approximately $277,000.00, $24,000.00 of which was earned by Ms. Basham. (TE C at 2; 3/30/2023 Tr. 78:5-22).

On January 23, 2019, the Debtor filed a petition seeking dissolution of the parties' marriage (the "Petition for Dissolution") (TE A).

Included in the Petition for Dissolution is the following statement, which statement was verified by the Debtor: "Spousal Maintenance: Respondent is in need of or entitled to Spousal Maintenance as she is the custodian of children whose age is such that she should not be required to work outside the home until the child is older." (TE A at 5, ¶ 18).

On February 12, 2019, the Pima County Superior Court judge presiding over the divorce proceedings entered temporary orders (the "Temporary Orders"), which orders were stipulated to by the parties. (TE B).

The Temporary Orders required the Debtor to pay Ms. Basham "family support in the amount of $9,000.00 per month . . . ." (TE B at 2, ¶ 10). The Temporary Orders also provided that Ms. Basham would no longer be considered an employee of the Business effective March 1,

---

[3] References to "TE" are references to exhibits admitted into evidence during the Evidentiary Hearing.

2019. (TE B at 2, ¶ 11). None of the Temporary Orders explicitly addressed the allocation of schooling, extracurricular, or medical expenses for the parties' minor children. (*See* TE B).

After the Temporary Orders were issued, the Debtor offered to settle the case by paying Ms. Basham $9,000.00 per month for four years to compensate her for what he believed to be one-half of the marital assets. (3/30/2023 Tr. 14:21-16:4; TE 1[4]). Through his attorney, the Debtor explained his belief that the proposed monthly payment "when considered as gross income . . . would ameliorate the need for spousal maintenance altogether." (TE 1 at 2).

Ms. Basham presented a counter-offer, which proposed an adjustment to the Debtor's proposed "buyout." (*See* TE 2[5]). Through counsel, Ms. Basham agreed that the buyout being negotiated would "negate[] [her] claim for spousal maintenance[.]" (TE 2 at 005).

The parties ultimately reached an agreement, which was incorporated into the *Consent Decree of Dissolution of Marriage With Minor Children* (the "Divorce Decree") (TE 3) that was entered by the state court on January 17, 2020.[6]

The Divorce Decree provides in part: "As and for a buyout of [Ms. Basham's] share of the [Debtor's] business, which should be $471,000.00 minus certain other community expenditures, the [Debtor] will give [Ms. Basham] a judgment in the amount of $387,000.00 which will be paid at the rate of $9,000.00 per month for 43 months starting December 1, 2019" (hereinafter, the "Equalization Payment"). (TE 3 at 012-013, § 7.a.iii).

The Divorce Decree also includes an award of child support to be paid to Ms. Basham and a statement that "[n]either party is in need of nor entitled to spousal maintenance." (TE 3 at 011-012, §§ 3-4).

Ms. Basham testified that it was her understanding that the family support portion of the Temporary Orders was renamed an equalization payment in the Divorce Decree. (3/30/2023 Tr. 77:5-16). In other words, it was her understanding that the Equalization Payment was in lieu of spousal maintenance in the sense that she would be able to use the installment payments she would be receiving to pay ongoing living expenses. (3/30/2023 Tr. 65:13-20, 80:2-9). Ms.

---

[4] TE 1 was also admitted as Ms. Basham's Exhibit D.
[5] TE 2 was also admitted as Ms. Basham's Exhibit E.
[6] The Divorce Decree was also admitted as Ms. Basham's Exhibit F.

Basham further testified that it was her understanding that she could have requested extra spousal maintenance, but that given the amount of the Equalization Payment, which amount she believed would cover expenses related to her self-maintenance, she declined to do so. (3/30/2023 Tr. 65:21-66:11).

The Debtor testified that it was his understanding no portion of the Equalization Payment was intended to represent spousal maintenance. (3/30/2023 Tr. 18:25-19:3). Rather, in his view, the Equalization Payment represents a property settlement. (*See* 3/30/2023 Tr. 14:1-15:22).

With respect to the financial condition of the parties, during calendar years 2019 and 2020, when the divorce proceedings were pending, the Debtor had gross annual income of approximately $310,000.00 and $450,000.00, respectively. (DE 1 at 38; 3/30/2023 Tr. 32:1-25). During those same calendar years, Ms. Basham had gross annual income of approximately $7,200.00 and $3,600.00, respectively. (TE G at 1, 25; 3/30/2023 Tr. 80:24-83:10).

In the years following the parties' divorce, Ms. Basham has primarily been a stay-at-home parent and full-time student. (*See* 3/30/2023 Tr. 107:13-19). She testified that she has had to withdraw funds from her IRA to pay living expenses, and that her annual income has been less than $24,000.00 in every year since the Petition for Dissolution was filed. (3/30/2023 Tr. 78:5-79:3, 86:16-23).

The Debtor, on the other hand, reports gross annual income of anywhere between approximately $140,000.00 and approximately $450,000.00 following the entry of the Divorce Decree. (DE 1 at 38; DE 13-1 at 13; TE Y; 3/30/2023 Tr. 31:20-32:13).

With respect to health care costs for the parties' minor children, the Divorce Decree provides in relevant part:

> i. The parties shall split any uncovered medical, dental, vision, mental health, prescription or other unreimbursed health care costs related to the child pursuant to the Child Support Calculator.
>
> ii. All requests for reimbursement for uncovered healthcare costs shall be provided in writing to the other party, with a copy of the receipt showing payment and an invoice detailing the service provided within 180 days from the date the medical

> service was provided to the child. The notified parent shall reimburse the other parent for his or her portion of the cost within 45 days of receipt of the request for reimbursement. Failure to request reimbursement within 180 days from the date the service was provided shall result in the right to receive reimbursement for the expense being waived.

(TE 3 at 012, § 6).

During the Evidentiary Hearing, the Debtor testified that Ms. Basham would send him periodic requests for reimbursement of medical expenses for their children, and that he would pay those requests as he received them. (3/30/2023 Tr. 9:5-17).

For some period of time, the Debtor also reimbursed Ms. Basham for certain expenses related to their children's schooling and extracurricular activities. (3/30/2023 Tr. 9:24-10:16, 13:12-13). Neither the Divorce Decree nor any other court order presented to this Court addresses or imposes on either party an obligation to pay or reimburse the other for expenses related to the children's schooling or extracurricular activities. (*See* TE B; TE 3; *see also* 3/30/2023 Tr. 12:1-14, 13:9-16).

At some point in time, the Debtor stopped making the payments he was required to make to Ms. Basham under the terms of the Divorce Decree. (DE 93 at 2, § II.C).

Thereafter, Ms. Basham filed a motion to enforce the Divorce Decree, and on December 10, 2021, she obtained a judgment for the balance owed on the Equalization Payment in the amount of $253,200.00, with interest accruing thereon at the legal rate of 4.25% (the "Equalization Judgment"). (DE 93 at 2, § II.C; TE 5).

At the time the Equalization Judgment was entered, the Debtor owned real property in Coos County, Oregon (the "Oregon Property"). (*See* 3/30/2023 Tr. 6:6-8).

On December 20, 2021, a copy of the Equalization Judgment was recorded in Coos County, Oregon in an effort to create a judgment lien on the Oregon Property. (TE 5; 3/30/2023 Tr. 114:11-115:1).

On December 21, 2021 (the "Petition Date"), the Debtor filed a petition for relief under Chapter 13 of the Bankruptcy Code, commencing this case.

The Debtor testified that he did not receive notice of the recorded Equalization Judgment prior to the filing of his bankruptcy case. (3/30/2023 Tr. 7:7-19, 8:11-15).

On May 16, 2022, the Debtor filed a motion requesting authority to sell the Oregon Property (the "Sale Motion"). (DE 57). The Court granted the Sale Motion and ordered that any valid lien of Ms. Basham would attach to the net proceeds from the sale (the "Sale Proceeds"). (DE 71). The Sale Proceeds total approximately $177,000.00 and are being held pending further court order. (DE 71; DE 87).

On May 24, 2022, Ms. Basham filed the Claim. The Claim represents the sum of four debts that Ms. Basham asserts she is owed: (1) $253,200.00, representing the principal amount of the Equalization Judgment; (2) $4,800.00, representing the principal amount of a pre-petition child support judgment (the "Child Support Judgment"); (3) $3,134.86, representing half of the pre-petition medical expenses for the parties' minor children for which Ms. Basham alleges she has not been reimbursed (the "Medical Expenses"); and (4) $8,111.00, representing half of the pre-petition preschool-related expenses for the parties' minor children for which Ms. Basham alleges she has not been reimbursed (the "Preschool Expenses").

Ms. Basham asserts that the Claim is a priority domestic support obligation (a "DSO") that is secured in part by the Sale Proceeds. Under this theory, Ms. Basham would be entitled to the Sale Proceeds and would have a deficiency priority DSO claim for the difference between the amount of the Claim and the amount of the Sale Proceeds.

The Debtor argues that: (1) the Medical Expenses and Preschool Expenses must be disallowed because Ms. Basham has failed to show that he is legally obligated to pay such expenses; (2) the recording of the Equalization Judgment did not create a valid judgment lien against the Sale Proceeds because applicable Oregon law was not followed; and (3) the Equalization Judgment is not a DSO within the meaning of the Code because it is not in the nature of support, but instead represents a property settlement.[7]

---

[7] The Debtor does not object to the Child Support Judgment component of Ms. Basham's Claim. (3/30/2023 Tr. 101:11-21; DE 101 at 4).

## III. Legal Analysis and Conclusions of Law

The Court is asked to make a determination as to: (1) the allowed amount of Ms. Basham's Claim; and (2) the nature of the Claim.

### A. The Parties' Burdens

In the Ninth Circuit:

> A proof of claim is deemed allowed unless a party in interest objects under 11 U.S.C. § 502(a) and constitutes prima facie evidence of the validity and amount of the claim pursuant to Bankruptcy Rule 3001(f) . . . . The filing of an objection to a proof of claim creates a dispute which is a contested matter within the meaning of Bankruptcy Rule 9014 . . . .
>
> Upon objection, the proof of claim provides some evidence as to its validity and amount and is strong enough to carry over a mere formal objection without more. To defeat the claim, the objector must come forward with sufficient evidence and show facts tending to defeat the claim by probative force equal to that of the allegations of the proofs of claim themselves.
>
> . . . .
>
> If the objector produces sufficient evidence to negate one or more of the sworn facts in the proof of claim, the burden reverts to the claimant to prove the validity of the claim by a preponderance of the evidence. The ultimate burden of persuasion remains at all times upon the claimant.

*Lundell v. Anchor Const. Specialists, Inc.*, 223 F.3d 1035, 1039 (9th Cir. 2000) (internal quotations and citations omitted).

### B. The Allowed Amount of the Claim

Pursuant to § 101(5) or the Bankruptcy Code, a party has a "claim" if that party has a "right to payment" or a "right to an equitable remedy for breach of performance if such breach gives rise to a right to payment."

The Debtor argues that he is not obligated to pay the Preschool Expenses under the terms of any court order or applicable statute, and is not obligated to pay the Medical Expenses because Ms. Basham did not follow the procedure for reimbursement set forth in the Divorce Decree.

Thus, he argues the Preschool Expenses and Medical Expenses components of the Claim must be disallowed on the basis that Ms. Basham has no legal right to payment of such expenses.

Ms. Basham maintains that the Debtor has an obligation to reimburse her for the Preschool Expenses and Medical Expenses which were incurred for the benefit of the parties' minor children.

### 1. The Preschool Expenses

The Preschool Expenses component of the Claim totals $8,111.00. Regardless of whether the dollar amount is an accurate reflection of expenses that have been incurred, if the Debtor was never obligated to pay any preschool-related expenses, the Preschool Expenses component of the Claim must be disallowed.

Ms. Basham testified that it is her understanding that school and extracurricular-related expenses are expenses that are to be split evenly between herself and the Debtor. (3/30/2023 Tr. 58:19-25, 60:2-5). However, Ms. Basham has cited the Court to no language in the Temporary Orders, Divorce Decree, or any statute that required or requires the Debtor to pay school or extracurricular-related expenses on behalf of the parties' children. (*See* TE B; TE 3; 3/30/2023 Tr. 59:1-60:5).

Given the silence in the Temporary Orders and Divorce Decree, given the absence of any other legally binding agreement allocating the costs of the Preschool Expenses, and given that Ms. Basham has not cited the Court to any law which would legally require the Debtor to pay the Preschool Expenses, Ms. Basham has failed to satisfy her burden of establishing that she has a right to payment of the Preschool Expenses, and such expenses are therefore disallowed.

### 2. The Medical Expenses

The Medical Expenses included as part of Ms. Basham's Claim total $3,134.86. Ms. Basham's proof of claim does not include a further accounting of such expenses. (*See* Proof of Claim 9-2).

At the Evidentiary Hearing, certain medical and speech therapy bills and receipts were admitted into evidence. Those bills and receipts total $5,244.03. (TE L; TE P). Ms. Basham

argues that the Debtor is responsible for $2,622.02 of these expenses, representing one-half of the total amount.

Although the parties dispute whether the Debtor reimbursed Ms. Basham for any of the Medical Expenses, the threshold issue is whether the Debtor had a legal obligation to pay the Medical Expenses.

The medical receipts and speech therapy bills submitted by Ms. Basham are dated between January 20, 2019 and June 4, 2021. (TE L; TE P). Thus, some receipts pre-date the entry of the Divorce Decree, and others post-date the entry of the Divorce Decree.

Ms. Basham has cited the Court to no court order or statute under which the Debtor was legally obligated to reimburse her for medical expenses related to the parties' minor children during the period of time before the parties' divorce was finalized. Thus, she has not established that the Debtor was legally obligated to pay any of the Medical Expenses that were incurred before the Divorce Decree was entered.

With respect to the Medical Expenses that were incurred after the Divorce Decree was entered, although the Divorce Decree requires the parties to split certain medical expenses related to their children, the Divorce Decree also expressly provides that a party seeking reimbursement for such expenses must request reimbursement within 180 days from the date the service was provided, in writing, or any such right to receive reimbursement is waived. (TE 3 at 012, § 6).

Based upon the receipts submitted by Ms. Basham during the course of the Evidentiary Hearing, all of the Medical Expenses that were incurred after the Divorce Decree was entered were incurred in 2020 or 2021. (*See* TE L; TE P). None of the receipts are accompanied by any dated correspondence to the Debtor requesting reimbursement, and the Debtor denies receiving any such reimbursement requests.[8] (3/30/2023 Tr. 56:10-57:6, 67:20-68:15, 69:19-71:1). Based upon the evidence and testimony before the Court, it is the determination of this Court that Ms.

---

[8] Ms. Basham concedes in her post-trial brief that she may not have complied with the reimbursement procedures set forth in the Divorce Decree. (DE 100 at 11).

Basham has failed to satisfy her burden of establishing that she has a right to payment of the Medical Expenses.[9]

Based upon the foregoing, the Preschool Expenses and Medical Expenses components of the Claim are disallowed in their entirety.

**C.    The Nature of the Claim**

Given that there is no dispute as to the amount or nature of the Child Support Judgment, and given that the Preschool Expenses and Medical Expenses components of the Claim have been disallowed in their entirety, as discussed above, the final issues before the Court are: (1) whether the Equalization Judgment is secured to any extent by the Sale Proceeds; and (2) whether the Equalization Judgment is a DSO within the meaning of the Code.

**1.    Whether the Equalization Judgment is Secured**

The Debtor argues that Ms. Basham did not comply with the statutory requirements for creating a judgment lien based upon a foreign judgment under applicable Oregon law, and that she therefore does not have a valid judgment lien on the Sale Proceeds.

Although Ms. Basham presented no testimony or evidence regarding this topic during her direct testimony, she maintains that the Equalization Judgment is secured by the Sale Proceeds. In her post-trial brief, Ms. Basham argues: "The funds from the approved sale of Oregon property (see docket 71, page 2) remain secured by Debtors judgment lien, per the previous order entered on sale of the Oregon property, see Docket 71, page 2. This isn't an Oregon divorce. While the property was in Oregon, the funds are now in Arizona. The lien is valid." (DE 100 at 1).

If Ms. Basham is attempting to argue that the validity of the lien was determined in the context of the sale of the Oregon Property, such argument is misguided. The motion to approve such sale clearly stated that Ms. Basham's lien was disputed. (DE 57). The order approving the sale provided that any liens not paid at the closing of the sale, including Ms. Basham's asserted lien, would attach to the Sale Proceeds. (DE 71). However, this language did not establish the

---

[9] The Court notes that whether the Debtor may have violated a provision of the Divorce Decree by failing to maintain insurance for the children and what the remedy for any such violation might be is not before this Court.

lien as valid, it merely preserved Ms. Basham's rights to assert and establish the validity of such lien. The validity of the lien was an issue to be resolved as part of this proceeding.

There is no dispute that the Equalization Judgment was entered by an Arizona state court, that the Equalization Judgment was recorded in Coos County, Oregon in which county the Oregon Property was located, and that the Sale Proceeds are the result of the sale of the Oregon Property.

Generally speaking, there is a two-step process for obtaining a judgment lien based upon a foreign judgment. First, the judgment has to be properly domesticated. Then, the judgment creditor has to follow applicable state law to create a judgment lien. *See Hanley Eng'g, Inc. v. Weitz & Co., Inc.,* 321 Or. App. 323, 326, 516 P.3d 1192, 1194–95 (Or. Ct. App. 2022) (citing *Baker by Thomas v. General Motors Corp.*, 522 U.S. 222, 235, 118 S.Ct. 657, 139 L.Ed. 2d 580 (1998)).

Oregon has adopted the Uniform Enforcement of Foreign Judgments Act, which is codified in Title 2, Chapter 24 of the Oregon Revised Statutes.[10]

Oregon Revised Statutes § 24.115 provides in relevant part:

> (1) A copy of any foreign judgment authenticated in accordance with the Act of Congress or the statutes of this state may be filed in the office of the clerk of any circuit court of any county of this state. Except as otherwise provided by law, the person filing the copy of the foreign judgment must pay a filing fee of $190. The clerk shall treat the foreign judgment in the same manner as a judgment of the circuit court.
>
> (2) A certified copy of any foreign judgment authenticated in accordance with the Act of Congress or the statutes of this state shall be recorded in the County Clerk Lien Record of any county other than the county in which the judgment is originally filed, in order to become a lien upon the real property of the judgment debtor in that county as provided in ORS 18.152.
>
> (3) A judgment so filed has the same effect and is subject to the same procedures, defenses and proceedings for reopening, vacating or

---

[10] Instead of complying with the Uniform Enforcement of Foreign Judgments Act, under Oregon law, a party can instead file a common law action to enforce a foreign judgment. O.R.S. § 24.155. There is nothing in the record that suggests Ms. Basham did this.

staying as a judgment of the circuit court in which the foreign judgment is filed, and may be enforced or satisfied in like manner.

Oregon Revised Statutes § 24.125 further provides:

(1) At the time of the filing of the foreign judgment, the judgment creditor or the creditor's lawyer shall make and file with the clerk of the court an affidavit setting forth the names and last-known post-office addresses of the judgment debtor and the judgment creditor, together with a separate statement containing the information required to be contained in a judgment under ORS 18.042.

(2) Promptly after filing the foreign judgment and the affidavit, the judgment creditor must mail notice of the filing of the foreign judgment to the judgment debtor. The notice shall include the name and post-office address of the judgment creditor and the judgment creditor's lawyer, if any, in this state. The judgment creditor must file with the court proof of mailing the notice.

(3) No execution or other process for enforcement of a foreign judgment filed pursuant to ORS 24.105 to 24.125, 24.155 to 24.175, except a judgment, decree or order of a court of the United States, shall issue until five days after the date the judgment, affidavit and separate statement required in subsection (1) of this section are filed.

In this case, there is no evidence before the Court that the Equalization Judgment was filed in any court in Oregon or that the applicable affidavit and noticing requirements were complied with. Under applicable Oregon law, the recording of the judgment in Coos County was not sufficient to create a judgment lien on the Oregon Property. Based upon the evidence, testimony, and record before the Court, it is the determination of this Court that Ms. Basham has not satisfied her burden of establishing that she had a valid judgment lien on the Oregon Property. As a result, Ms. Basham does not have a valid lien on the Sale Proceeds and her claim is unsecured.

**2. Whether the Equalization Judgment is a DSO**

Pursuant to § 101(14A) of the Bankruptcy Code:

The term 'domestic support obligation' means a debt that accrues before, on, or after the date of the order for relief in a case under this title, including interest that accrues on that debt as provided under applicable nonbankruptcy law notwithstanding any other provision of this title, that is—
(A) owed to or recoverable by—

     (i) a spouse, former spouse, or child of the debtor or such child's parent, legal guardian, or responsible relative; or
     (ii) a governmental unit;
  (B) in the nature of alimony, maintenance, or support (including assistance provided by a governmental unit) of such spouse, former spouse, or child of the debtor or such child's parent, without regard to whether such debt is expressly so designated;
  (C) established or subject to establishment before, on, or after the date of the order for relief in a case under this title, by reason of applicable provisions of—
     (i) a separation agreement, divorce decree, or property settlement agreement;
     (ii) an order of a court of record; or
     (iii) a determination made in accordance with applicable nonbankruptcy law by a governmental unit; and
  (D) not assigned to a nongovernmental entity, unless that obligation is assigned voluntarily by the spouse, former spouse, child of the debtor, or such child's parent, legal guardian, or responsible relative for the purpose of collecting the debt.

  In this case, there is no dispute that: (1) the debt is owed to or recoverable by a former spouse of the Debtor, satisfying § 101(14A)(A); (2) the debt was established prior to the Petition Date pursuant to a separation agreement, divorce decree, property settlement, or court order, satisfying § 101(14A)(C); and (3) the debt has not been assigned to a governmental entity, satisfying § 101(14A)(D). Thus, the issue is whether the debt is "in the nature of alimony, maintenance, or support . . . without regard to whether such debt is expressly so designated." § 101(14A)(B).

  Whether a debt is "actually in the nature of support" is "a factual determination made . . . as a matter of federal bankruptcy law." *Chang v. Chang (In re Chang)*, 163 F.3d 1138, 1140 (9th Cir. 1998).

  When a settlement is involved, as is the case here, "in determining whether a debtor's obligation is in the nature of support, the intent of the parties at the time the settlement agreement is executed is dispositive." *Friedkin v. Sternberg (In re Sternberg)*, 85 F.3d 1400, 1405 (9th Cir. 1996), *overruled on other grounds by Murray v. Bammer (In re Bammer)*, 131 F.3d 788 (9th Cir. 1997).

According to the Ninth Circuit:

> A trial court should consider several factors in determining how the parties intended to characterize the obligation. Foremost, the trial court should consider whether the recipient spouse actually needed spousal support at the time of the divorce. In determining whether spousal support was necessary, the trial court should examine if there was an imbalance in the relative income of the parties at the time of the divorce decree. The trial court should also consider whether the obligation terminates upon the death or remarriage of the recipient spouse and whether the payments are made directly to the recipient spouse and are paid in installments over a substantial period of time. Finally, the labels given to the payments by the parties may be looked at as evidence of the parties' intent.

*Id.* (internal quotations and citations omitted).

In this case, it is abundantly clear that Ms. Basham was in need of spousal support at the time of the parties' divorce. The Debtor explicitly acknowledged as much in his verified Petition for Dissolution. Further, during the divorce proceedings, Ms. Basham lost her employment and her small income stream given the Debtor's retention of the Business and the Temporary Orders issued early in the case. At the time the Divorce Decree was entered, Ms. Basham had no income and two young children in her care. The Debtor, on the other hand, was generating gross annual income in excess of $400,000.00.

Turning to the other Ninth Circuit factors, although the Equalization Payment is described as a "buyout" in the Divorce Decree, the Equalization Payment was to be paid to Ms. Basham in regular monthly installments as is typical of support awards. That the Divorce Decree does not provide for the termination of Equalization Payment installments upon Ms. Basham's remarriage or death is not material to this Court's analysis given that the Divorce Decree provides for a 43-month payment term, the end of which term appears to roughly coincide with a time when the parties' children are expected to be of full-time school age. At such time, Ms. Basham would presumably be in a position to obtain employment that would provide her with sufficient income to cover her expenses.

The intent of the parties at the time they entered into their settlement agreement, which agreement was incorporated into the Divorce Decree, is dispositive, and the Court finds Ms. Basham's testimony that the intent behind the Equalization Payment was to extend the family support payments set forth in the Temporary Orders into the post-decree period to be credible. The Debtor himself testified that the Equalization Payment was in lieu of spousal maintenance. It is clear that the monthly payments to be made by the Debtor pursuant to the Divorce Decree were in fact intended to provide spousal maintenance for Ms. Basham, regardless of what such payments were called.

It is therefore the determination of this Court that based upon the evidence presented and testimony of the parties, upon consideration of the relevant Ninth Circuit factors, the Equalization Payment, as evidenced by the Equalization Judgment, is "in the nature of alimony, maintenance or support" and is therefore a domestic support obligation pursuant to 11 U.S.C. § 101(14A).

## IV. Conclusion

Based upon the foregoing, it is the conclusion of this Court that Ms. Basham has an allowed pre-petition claim in this case in the amount of $258,000.00, plus accrued and accruing interest pursuant to the terms of the Child Support Judgment and Equalization Judgment. Given that there is no dispute that the Child Support Judgment represents a DSO, and given this Court's determination that the Equalization Judgment constitutes a DSO, the total of Ms. Basham's allowed claim is a domestic support obligation within the meaning of 11 U.S.C. § 101(14A).[11]

Wherefore, based upon the foregoing, for good cause shown;

**IT IS HEREBY ORDERED** that the Objection is sustained in part and overruled in part.

**IT IS FURTHER ORDERED** that Ms. Basham has an allowed claim in this case in the principal amount of $258,000.00, plus accrued and accruing interest pursuant to the terms of the Equalization Judgment and Child Support Judgment, all of which claim constitutes a domestic support obligation within the meaning of 11 U.S.C. § 101(14A).

---

[11] The Court notes that "[a]llowed unsecured claims for domestic support obligations that, as of the date of the filing of the petition in a case . . . are owed to or recoverable by a spouse, former spouse, or child of the debtor, or such child's parent . . ." are entitled to priority pursuant to § 507(a)(1)(A) of the Bankruptcy Code.

**IT IS FURTHER ORDERED** that the remaining portion of Ms. Basham's Claim is disallowed.

**DATED AND SIGNED ABOVE.**